UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CARL R. SCHMEICHEL,

                          Plaintiff,

                                                                         Case # 16-CV-410-FPG

v.

                                                                         DECISION AND ORDER

INSTALLED BUILDING PRODUCTS, LLC, et al.,

                          Defendants.

**INTRODUCTION**

Plaintiff Carl R. Schmeichel brings suit for disability discrimination against Defendants MIG Building Systems and Installed Building Products, LLC—his former employer and its parent company, respectively. He alleges that Defendants terminated him from employment because of his disability or, alternatively, because they regarded him as disabled, in violation of the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law ("NYSHRL"). ECF No. 21. Before the Court are four motions. Plaintiff has filed a motion for partial summary judgment on the issue of liability. ECF No. 28. Defendants have filed three motions: a motion for summary judgment and two motions to strike certain documents on which Plaintiff relies for purposes of summary judgment. *See* ECF Nos. 27, 40, 42. The Court resolves all of these motions in this order. For the following reasons, Defendants' motion for summary judgment is GRANTED, Plaintiff's motion for partial summary judgment is DENIED, and Defendants' motions to strike are DENIED AS MOOT.

**LEGAL STANDARD**

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

**BACKGROUND**

One of the disputes between the parties concerns which evidence the Court should consider in evaluating the motions for summary judgment. Defendants primarily rely on Plaintiff's deposition testimony to argue that judgment as a matter of law in their favor is appropriate, while Plaintiff contends that his affidavits demonstrate that he is entitled to partial summary judgment. Defendants counter that Plaintiff's affidavits should be stricken under the sham affidavit rule, given their inconsistency with Plaintiff's deposition testimony. Defendants also move to strike other evidence on which Plaintiff relies.

Rather than resolving these disputes at the outset, the Court will begin by setting forth the operative statement of facts for purposes of summary judgment. Consistent with the standard of review, the Court bases this narrative on the parties' stipulations and the undisputed facts, and, where there are factual disputes, the Court views the disputed facts in the light most favorable to

Plaintiff and draws all reasonable inferences in Plaintiff's favor.[1]  *See Smolen v. Wilkinson*, No. 11-CV-6001, 2013 WL 5417099, at *1 (W.D.N.Y. Sept. 26, 2013).

Defendants provide services in the construction and home-maintenance markets, including the installation of gutters, home insulation, and shower doors, mirrors, and shelving.  Defendants do not dispute that they are subject to the ADA and the NYSHRL.  *See* ECF No. 38 ¶ 3; *see also Parker v. Mack*, No. 09-CV-1049A, 2010 WL 11507368, at *2 n.4 (W.D.N.Y. Jan. 4, 2010).  In November 2007, Defendants hired Plaintiff as an insulation installer.  Plaintiff worked out of MIG's location in Sanborn, NY, and his supervisor was Mark Palmer.

Some discussion regarding Defendants' employment practices is necessary.  Although an employee might be given a particular job title—for example, "insulation installer"—employees were not limited to performing work exclusively within that division or department.  Rather, employees would work in one primary department, and would work in others when "their divisions were slow."  ECF No. 35 ¶ 29; *see also* ECF No. 44-1 at 60.  Consequently, "it was common practice for [i]nstallers to be assigned to a variety of duties irrespective of their formal job titles."  ECF No. 28-1 ¶ 8.

During the timeframe relevant to this case, Plaintiff's primary job was the installation of shower doors, shelving, and mirrors—referred to as "SDSM installation."  *See* ECF No. 27-2 ¶ 2; ECF No. 37 ¶ 2.  But like other employees, Plaintiff "worked in other divisions when shower doors, mirror[s] and shelving were slow."  ECF No. 37 ¶ 2.  Plaintiff identifies five activities that were part of his training in SDSM installation: ordering, measuring, receiving, fabricating, and

---

[1] Generally, when cross-motions for summary judgment are filed, the court "must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party."  *Physicians Comm. for Responsible Medicine v. Leavitt*, 331 F. Supp. 2d 204, 206 (S.D.N.Y. 2004).  However, because the Court concludes that Defendants are entitled to judgment as a matter of law even considering the facts in the light most favorable to Plaintiff, it need not engage in a separate analysis.

3

installation. ECF No. 27-4 at 12. Ordering is the process of buying glass, shower-door kits, and other materials necessary for the project. Measuring involves visiting a job site and taking measurements to determine the correct size for the items. Receiving entails collecting ordered items, taking inventory, and placing items in the correct receiving bay. Fabricating is the process of assembling the item to be installed and then loading it onto the truck for delivery and installation. As for installation, Plaintiff learned about the different kinds of showers and how to install each kind. Plaintiff estimates that he spent "[a]t least" half of his three-month training learning about installation, with fabrication being the "next longest" area of training. ECF No. 44-1 at 9.

The lifting requirements of SDSM installation are of central relevance to this case. The parties agree that SDSM installation is a "physically demanding" job. ECF No. 27-2 ¶ 3; ECF No. 37 ¶ 3. The process of lifting an item onto the truck for delivery, as well as unloading the truck and installing it at the jobsite, involves heavy lifting, and would typically involve one or two employees. *See* ECF No. 35 ¶ 3; ECF No. 44-1 at 6, 10, 16. The number of employees involved would depend on the nature of the job. If a shower door was very heavy, or was lightweight but "awkward" in design, two workers would be assigned to the job. ECF No. 44-1 at 12; *see* ECF No. 28-13 ¶ 26. If there were multiple installations to be performed on a single day, Plaintiff would work with another employee. ECF No. 35 ¶ 3(d). Plaintiff also asserts that "if there were workers who were not needed to perform other duties, they would be assigned to a job that might otherwise be performed by fewer people." ECF No. 28-13 ¶ 26. Plaintiff testified that he worked with another person on "at least half, if not more" of SDSM installation jobs. ECF No. 44-1 at 10. Regarding weight, "shower door[] installations can weigh between 50 and 100+ pounds," and "most individual panels [that Plaintiff] installed weighed between 20 and 50 pounds." ECF No. 35 ¶ 3(c).

4

In December 2013, Plaintiff sustained injuries at work when he fell off a 16-foot ladder, including a compression fracture to a rib and to his vertebrae. Plaintiff did not return to work until January 28, 2014. Plaintiff's physician recommended certain work restrictions for Plaintiff upon his return: Plaintiff could perform sedentary consultation work for two to four hours per day and up to two days per week. Defendants placed Plaintiff on "transitional duty work," the purpose of which was to "assist [Plaintiff] in building [his] physical capacities to return to [his] usual position." ECF No. 27-4 at 104. A letter that Defendants sent in conjunction with this reassignment states expressly that "[t]he tasks involved in this [transitional duty work] are only temporary in nature and are not a permanent re-assignment." *Id.*

Over the course of the next months, as Plaintiff's medical restrictions lessened, Defendants modified his tasks to conform to those restrictions. From January to April 2014, Plaintiff supervised and trained others, ordered materials, and did "whatever [he] was physically capable of doing." ECF 27-4 at 36. His hours steadily increased during that period. *Id.* at 38.

In May 2014, Plaintiff's restrictions were further reduced, in that he was only limited to no prolonged standing or sitting greater than 30-90 minutes at a time, and no lifting greater than 15 pounds "at patient's discretion." *Id.* at 112. At that time, Plaintiff began to assist with SDSM installations. Specifically, another employee would "do[] the physical" portions of the installation, and Plaintiff would perform "the remaining" tasks. *Id.* at 77. By October 2014, Plaintiff's work restrictions permitted him to stand for at most 30 minutes at a time, sit for at most 30-90 minutes at a time, and lift no greater than 15-20 pounds. ECF No. 27-4 at 120. Plaintiff claims that the restrictions he was under in October 2014 remained in effect until his termination, and that "Defendants were aware that [those] restrictions . . . remained in effect . . . and were likely to be

permanent."[2] ECF No. 35 ¶ 10. During this latter period of 2014, Plaintiff performed a variety of tasks in his transitional role: he assisted with SDSM and insulation installations, supervised and trained other installers, acted as a salesperson, performed air-seal jobs, installed wire and melamine shelving, performed blower-door tests, and helped to install and repair gutters. ECF No. 28-13 ¶ 20. Plaintiff performed these duties until his termination.

On January 29, 2015, Plaintiff met with his physician. In preparation for a medical procedure, Plaintiff's physician placed him under a new set of medical restrictions: he could not lift over 20 pounds, he could not twist or turn, he could not sit or stand for more than 30-90 minutes at a time, and he could not bend to cause pain. Plaintiff provided these restrictions to Defendants on February 3. The next day, Palmer terminated Plaintiff, for the stated reason of "job inability to perform." ECF No. 28-1 ¶ 51; ECF No. 38 ¶ 51.

Plaintiff brought this action in May 2016. He raises four claims: (1) an ADA disability discrimination claim; (2) an ADA "regarded as" disability discrimination claim; (3) a NYSHRL disability discrimination claim; and (4) a NYSHRL "regarded as" disability discrimination claim.[3]

## DISCUSSION

As noted above, before the Court are four motions. Substantively, Defendants move for summary judgment on all claims, and Plaintiff moves for partial summary judgment on the issue of liability as to all claims. Defendants have also filed two motions to strike certain evidence

---

[2] In a November 2014 email, one of Defendants' employees summarizes certain work restrictions for Plaintiff that another physician prescribed. *See* ECF No. 28-9 at 2. These restrictions provide slightly different lifting limitations than those set forth in his October 2014 work restrictions: Plaintiff may not lift more than 30-35 pounds and can frequently lift 15-18 pounds. *See id.* The Court does not consider the distinction material, and regardless, in January 2015, Plaintiff's physician imposed a lifting restriction of no more than 20 pounds.

[3] Although Plaintiff mistakenly references Title VII when discussing the federal claims in his amended complaint, it is clear that he intends to bring those claims under the ADA. *See* ECF No. 21 ¶ 1.

submitted by Plaintiff in connection with the motions for summary judgment. The Court will address the motions to strike before proceeding to the merits.

## I. Defendants' Motions to Strike

Defendants move to strike five items—Plaintiff's May and June 2018 affidavits, Defendants' payroll records, and two spreadsheets that Plaintiff created based on Defendants' payroll records. Defendants argue that the affidavits should be stricken primarily because they violate the sham affidavit rule. They contend that the payroll records and spreadsheets should be stricken because these documents have not been properly authenticated by a witness with personal knowledge of their contents. The Court concludes that it need not resolve these motions.

Plaintiff's affidavits list a variety of facts that could be construed as inconsistent with his deposition testimony. For that reason, Defendants move to strike the affidavits under the sham affidavit rule. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [his] own prior deposition testimony."). In response to the motions to strike, Plaintiff clarified the facts set forth in his affidavit, cross-referencing those facts with his deposition testimony to demonstrate their consistency. This is helpful, as much of the dispute over these affidavits can be traced to the ambiguity of the allegations contained therein.

For example, Plaintiff states in one of his affidavits that "[b]y October of 2014, I was able to perform the essential functions of my job with accommodations." ECF No. 28-13 ¶ 17. Defendants contend this statement contradicts his deposition testimony that he never returned to his original duties. *See* ECF No. 27-4 at 30. But Plaintiff clarifies that his statement merely reflects "his contention that the modification of his duties pursuant to which he was working at the time of

7

his discharge *was* a reasonable accommodation of his disability." ECF No. 48 at 8. This is an appropriate argument, and it is one the Court addresses below. Similarly, Defendants take issue with Plaintiff's claim that "[o]n most large jobs, multiple people would assist in loading [shower-door panels] . . . onto [the] truck prior to installation." ECF No. 35 ¶ 3(b). This could indeed be read to contradict Plaintiff's prior testimony that loading materials onto the truck was a one-person job. *See* ECF No. 44-1 at 6. But again, Plaintiff clarifies that this statement means only that when multiple installers were assigned to a job, Plaintiff would receive assistance in loading, as opposed to a broader contention that loading was never a one-person job. *See* ECF No. 48 at 2-3.

In any case, having reviewed the relevant materials, the Court concludes that it need not definitively determine whether Plaintiff's affidavits violate the sham affidavit rule. This is because, even considering those affidavits (as clarified in Plaintiff's responses to the motions to strike), Defendants are still entitled to judgment as a matter of law. Accordingly, the Court has incorporated the facts from Plaintiff's affidavits into the operative statement of facts.

As for the payroll records and spreadsheets, that evidence does not suffice to create a genuine issue of material fact on the dispositive questions. At most, such evidence is cumulative of other evidence Plaintiff presents. Therefore, the Court need not determine whether it should be stricken. Defendants' motions to strike are denied as moot. *See Francis v. Wyckoff Heights Med. Ctr.*, 177 F. Supp. 3d 754, 778 (E.D.N.Y. 2016) (denying as moot motion to strike, where defendants were entitled to summary judgment even considering the disputed evidence). Given this conclusion, the Court declines to award expenses or attorney's fees to Defendants under Federal Rule of Civil Procedure 56(h).

## II. Parties' Motions for Summary Judgment

Defendants move for summary judgment on all claims, arguing, among other things, that Plaintiff cannot show that he was qualified to perform the essential functions of his job with or without reasonable accommodation. Plaintiff responds that, by October 2014, he could perform, and was performing, the essential functions of his job with reasonable accommodations. Plaintiff asserts that he is entitled to partial summary judgment on the issue of liability as to all claims. Alternatively, Plaintiff argues that there are genuine issues of material fact that preclude summary judgment. *See* ECF No. 46 at 10.

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quotation omitted). Accordingly,

> [t]o establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

*Id.* (quotation omitted). At issue here is the third element—whether Plaintiff was qualified to perform the essential functions of his position with or without reasonable accommodation. All four of Plaintiff's claims share this essential element. *See Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) ("A claim of disability discrimination under the New York State Human Rights Law . . . is governed by the same legal standards as govern federal ADA claims." (quotation omitted)); *Jacobsen v. New York City Health & Hosps. Corp.*, 11 N.E.3d 159, 166 (N.Y. 2014).

Consideration of the third element proceeds in a step-by-step analysis. The first step is to determine the essential functions of the plaintiff's job. "Although a court will give considerable

deference to an employer's determination as to what functions are essential, there are a number of relevant factors that may influence a court's ultimate conclusion as to a position's essential functions." *McMillan*, 711 F.3d at 126. These include "the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." *Id.* (citing *Stone v. City of Mt. Vernon*, 118 F.3d 92, 97 (2d Cir. 1997)). A court "must conduct a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice," and normally "no one listed factor will be dispositive." *Id.* (internal quotation marks omitted). The applicable regulations define "essential functions" to mean "the fundamental job duties of the employment position," as opposed to the "marginal functions of the position." 29 C.F.R. § 1630.2(n)(1); *see also id.* § 1630.2(n)(2), (3) (listing factors to consider).

Next, "[a]fter the essential functions of the position are determined, the plaintiff must demonstrate that he or she could have performed these functions, with or without reasonable accommodation, at the time of the termination or discipline." *McMillan*, 711 F.3d at 127. "This burden is not heavy: It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.* (internal quotation marks omitted). "'Reasonable accommodations' may include adjustments to work schedules or other job restructuring." *Id.* (quoting 45 C.F.R. § 84.12(b)). "Of course, a reasonable accommodation can never involve the elimination of an essential function of a job." *Id.* (internal quotation marks and brackets omitted).

Finally, "[i]f a plaintiff suggests plausible accommodations, the burden of proof shifts to the defendant to demonstrate that such accommodations would present undue hardships and would therefore be unreasonable." *Id.* at 128.

### a. Essential Functions of Plaintiff's Job

Before delving into the essential functions of Plaintiff's job, it is necessary to clarify what Plaintiff's job was. While the parties agree that Plaintiff's job title was "insulation installer," they also agree that his primary job during the relevant timeframe was SDSM installation. *See* ECF No. 27-2 ¶¶ 1, 2; ECF No. 37 ¶¶ 1, 2. In addition, as Plaintiff explains the practice, although employees were assigned to a primary division, they could be assigned work in other divisions if their primary divisions were slow. *See* ECF No. 37 ¶ 2; *see also* ECF No. 28-13 ¶ 4; ECF No. 35 ¶¶ 29-30; ECF No. 46 at 4. During his employment, Plaintiff took advantage of this practice by "cross-training" and performing work in multiple divisions. ECF No. 35 ¶¶ 29-30. Accordingly, notwithstanding his initial job title, the Court understands Plaintiff's job at the time of his injury to have involved a primary assignment in SDSM installation, as well as secondary assignments in other divisions. With that understanding, the Court proceeds with its analysis.

The first step is to determine the essential functions of Plaintiff's job, which requires evaluation of the essential functions of his primary assignment: SDSM installation. At issue here is whether heavy lifting is an essential function of an SDSM installer's job.

Defendants assert that heavy lifting is an essential function of the SDSM installer position. Only when a shower door weighed greater than seventy-five pounds—which amounts to approximately 5% of installations—would a second installer provide assistance. Plaintiff appears to suggest that, to the contrary, heavy lifting was not always necessary. This is because on most days, he worked with another installer who would assist in lifting the materials. A second installer

11

would provide assistance not only if a shower door was particularly heavy, but also if there were multiple installations to be performed on one day, if the shower door was awkward in design, or if there were other installers available who were not needed to perform other duties.

The record clearly establishes that an essential function of an SDSM installer's position is to lift heavy items, with or without assistance. Mark Palmer's declarations demonstrate Defendants' judgment that heavy lifting is an essential function. *See* ECF No. 27-4 at 167; ECF No. 43-2 ¶ 4; *see also McMillan*, 711 F.3d at 126. And Plaintiff's own deposition testimony and affidavits show that, in practice, heavy lifting is a necessary task in SDSM installation—both when fabricating and loading items for transportation, and when unloading and installing items at the job site. In terms of weight, Plaintiff estimates that "most individual panels [he] installed weighed between 20 and 50 pounds." ECF No. 35 ¶ 3(c). Similarly, at his deposition, Plaintiff estimated that a framed shower-door panel weighs between twenty and thirty pounds, and that glass shower doors could weigh between "50 to 100-something pounds per piece of glass." ECF No. 44-1 at 11.

Furthermore, heavy lifting is an essential function for *every* SDSM installer, even if more than one installer is assigned to a job. An SDSM installation job would typically involve one or two employees. *See* ECF No. 44-1 at 16. Based on Plaintiff's affidavits and deposition testimony, there are four circumstances in which a second installer would be assigned to an installation job: (1) there are multiple jobs to be performed on a particular day; (2) the item to be installed is excessively heavy; (3) the item to be installed is awkward in design; and (4) there are extra installers available because they are "not needed to perform other duties." ECF No. 28-13 ¶ 26. Plaintiff estimates that "at least half, if not more" of jobs were performed by more than one

12

installer. ECF No. 44-1 at 10. For the remainder, however, an installer would need to lift the items on his own.

Consequently, in the minority of jobs where an installation was performed alone, an installer would need to be able to lift panels weighing twenty to fifty pounds, if not more. In addition, even on two-person jobs, each installer would need to be able to lift a significant amount of weight if the item was excessively heavy and one installer could not carry it alone. While Plaintiff identifies other types of two-person jobs where a fellow installer may be able to carry the load without assistance (see (3) and (4) above), those facts simply reinforce the conclusion that heavy lifting is an essential function. Indeed, Plaintiff concedes that SDSM installation is a "physically demanding job." ECF No. 37 ¶ 3. Therefore, even taking the facts in the light most favorable to Plaintiff, the record establishes that the ability to lift items weighing between at least twenty to fifty pounds is a fundamental job duty, rather than a marginal task, and is therefore an essential function of the SDSM installer position.

### b. Performance of Essential Functions with or without Reasonable Accommodation

The Court next turns to whether Plaintiff could perform this essential function, without or without reasonable accommodation. As an initial matter, it is clear from the record that Plaintiff could not perform the lifting requirements of his job as an SDSM installer without a reasonable accommodation. Plaintiff's October 2014 and January 2015 work restrictions precluded him from lifting more than twenty pounds, which is the minimum requirement for the job. Plaintiff concedes as much. *See* ECF No. 46 at 3.

Therefore, the only question is whether Plaintiff can demonstrate that there is a reasonable accommodation that would allow him to perform the essential functions of his job. *See Hodges v. Holder*, 547 F. App'x 6, 8 (2d Cir. 2013) (summary order) ("[T]he plaintiff bears the burdens of

13

both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment." (internal quotation marks omitted)). Plaintiff identifies three possible accommodations. First, Defendants could assign another installer to help him lift materials. Second, Defendants could assign him to perform other duties outside of his primary department, including sales, performing air seals and blower-door tests, and assisting others with gutter and insulation installation. Third, Defendants could assign him to install wire shelving, a job that another employee performed "almost exclusively." ECF No. 35 ¶ 27. The Court concludes that none of these suggestions constitutes a reasonable accommodation.

Plaintiff's first proposed accommodation is that another installer could help him lift materials during SDSM installations. He contends that Defendants often "assigned a helper to assist [him] with lifting materials during the installation process," and that such assignments were "consistent with [Defendants'] ordinary practices."[4] ECF No. 28-13 ¶¶ 21, 22.

The Court disagrees that this is a reasonable accommodation. As Defendants point out, the assignment of another employee to perform an essential function of the plaintiff's job "constitutes an elimination of [that] essential function . . . and therefore is unreasonable under the law." *Snowden v. Trs. Of Columbia Univ.*, No. 12 Civ. 3095, 2014 WL 1274514, at *5 (S.D.N.Y. Mar. 26, 2014), *aff'd*, 612 F. App'x 7 (2d Cir. 2015); *see also Shannon v. New York City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003) ("A reasonable accommodation can never involve the elimination of an essential function of a job."). Courts have relied on this rule to reject employees' claims that employers should be required to provide assistants to lift items. *See, e.g.*, *Snowden*, 2014 WL

---

[4] As it is used here, the term "helper" is ambiguous. It could be understood to mean that Defendants assigned an extra employee to assist Plaintiff with lifting duties specifically as a means to help him perform his job after his injury. But it does not appear that Plaintiff uses the term in that sense. Rather, "helper" simply refers to the second SDSM installer who may be assigned to an installation job when another person is needed. *See, e.g.*, ECF No. 35 ¶¶ 3(d), (e) (stating that Plaintiff worked with and trained "helpers" prior to his 2013 injury); ECF No. 48 at 3-4.

1274514, at *5 (concluding that mail clerk's request for "help" in lifting duties was not a reasonable accommodation); *Wilhite v. Wal-Mart Stores East, LP*, No. 5:13-CV-56, 2014 WL 4684009, at *4 (W.D. Ky. Sept. 19, 2014) (unloader at department store); *Paul v. CSK Auto, Inc.*, No. 14-CV-12484, 2015 WL 4756602, at *5 (E.D. Mich. Aug. 11, 2015) (delivery driver); *see also Gilbert v. Frank*, 949 F.2d 637, 644 (2d Cir. 1991).

Citing *Miller v. Illinois Department of Transportation*, 643 F.3d 190 (7th Cir. 2011), Plaintiff responds that the assignment of another installer to help him is reasonable under the circumstances. In *Miller*, the plaintiff—a worker on a bridge maintenance crew—filed suit alleging disability discrimination due to acrophobia (fear of heights). The district court granted summary judgment in favor of the employer, but the Seventh Circuit reversed. *Miller*, 643 F.3d at 192. One of the issues was whether the plaintiff's requested accommodation, rearranging job tasks so that he would not be required to work from certain heights, was reasonable. *Miller*, 643 F.3d at 194, 197. The Seventh Circuit first held that there was a genuine dispute of fact as to whether working "above 25 feet in an extreme position" was an essential function of the plaintiff's job. *Id.* at 197. The court noted that, while work from heights in extreme positions was an essential function of the bridge crew as a unit, it was not clear that "every task required of the bridge crew as a whole was an essential task of each bridge crew member." *Id.* at 198. There was evidence that no one person was assigned permanently to any one task, and that crew members internally organized themselves according to their skills and limitations. Based on the same evidence, the court determined that a jury could likewise conclude that the plaintiff's requested accommodation was reasonable.

*Miller* does not compel a different result in this case. Indeed, the *Miller* court recognized that "task reassignments within a job can be unreasonable in situations where the reassigned task

is an essential function of the job." *Id.* at 199. That doctrine did not apply in *Miller* because a reasonable jury could conclude that work from heights was *not* an essential function of each individual crew member. *Id.* at 199-200. But here, unlike in *Miller*, the requested accommodation involves the proposed reassignment of an essential function, *i.e.*, lifting. In addition, unlike the bridge crew in *Miller*, SDSM installers do not always work as a collective unit that allows for internal rearrangement and substitution. If an SDSM installer is performing a one-person job, he needs to be able to load the shower-door panels into the truck and lift them as part of the installation process. If an installer is performing a two-person job that requires both installers to carry a particularly heavy item, each installer must be able to do his share of the lifting. Although there may be circumstances where one SDSM installer could perform all of the lifting while another installer performs other tasks, Plaintiff's working environment is not, as a general matter, analogous to the bridge crew in *Miller*. *Accord Vraniskoska v. Franciscan Communities, Inc.*, No. 2:11-CV-308, 2013 WL 4647224, at *10 (N.D. Ind. Aug. 29, 2013) (distinguishing *Miller* on the ground that the record did not establish that "the essential functions belonged to the 'team' collectively rather than to each [worker] individually").

Regarding the second proposed accommodation, Plaintiff asserts that, while in his transitional role, he undertook a variety of tasks in many different departments. He appears to assert that Defendants could accommodate his disability by assigning him to do these tasks on a permanent basis, and that such an accommodation would be reasonable because "it was common practice for [i]nstallers to be assigned to a variety of duties irrespective of their formal job titles." ECF No. 28-13 ¶ 23. In essence, Plaintiff argues that a reasonable accommodation would be for his transitional role to be made into a permanent one.

The Court is not persuaded. Plaintiff essentially requests that a new position be created for him. No longer would he be performing the essential functions of his primary assignment, in addition to secondary assignments in other divisions—instead, he would float between a number of divisions while undertaking no assignments that exceeded his work restrictions.[5] Plaintiff fails to provide any evidence that such a permanent position existed and was vacant. It is well-established that an employer is not "obliged to create a new position to accommodate the employee." *Parnahay v. United Parcel Serv., Inc.*, 20 F. App'x 53, 56 (2d Cir. 2001) (summary order) (employee failed to establish that permanent reassignment to light-duty position was a reasonable accommodation, where there was no evidence "that [the] position . . . existed and was available"). At most, Plaintiff can show that, based on the work he was performing in late 2014, there were sufficient tasks for him to do to justify a full-time position of the sort he requests. That does not suffice. *See Parnahay*, 20 F. App'x at 56; *see also Wolfinger v. Consol. Edison Co. of N.Y., Inc.*, No. 17-CV-1710, 2018 WL 3637964, at *11, (E.D.N.Y. July 31, 2018) ("An employer is not . . . obligated to create a new light-duty position for a disabled employee or make permanent previously temporary light-duty positions.").

On the same grounds, Plaintiff's third proposed accommodation—reassignment to the position of wire-shelving installer, which was held by another employee—is not reasonable. Plaintiff provides no evidence that there was a vacancy for that position. In fact, he seems to admit that the position was filled, and an employer is not required to "move another employee from a previously held position in order to accommodate the disabled employee." *Needle v. Alling & Cory, Inc.*, 88 F. Supp. 2d 100, 107 (W.D.N.Y. 2000).

---

[5] For example, with respect to insulation installation, Plaintiff admits that he could not be the installer for those jobs. ECF No. 27-4 at 73. Instead, he would "take less of a ticket" and provide assistance to another installer, who would perform most of the physical labor. *See id.* at 72.

In short, the record establishes that Plaintiff could not perform one of the essential functions of his job as an SDSM installer without reasonable accommodation, and Plaintiff fails to identify a reasonable accommodation that would allow him to do so. Consequently, Plaintiff cannot make out a *prima facie* case of disability discrimination, and judgment as a matter of law in Defendants' favor is appropriate on all four claims. As a result, Plaintiff is not entitled to partial summary judgment on the issue of liability.

## CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment (ECF No. 27) is GRANTED. Plaintiff's motion for partial summary judgment (ECF No. 28) is DENIED. Defendants' motions to strike (ECF Nos. 40 & 42) are DENIED AS MOOT. The Clerk of Court is directed to enter judgment for Defendants and close this case.

IT IS SO ORDERED.

Dated: November 26, 2018
       Rochester, New York

                                        HON. FRANK P. GERACI, JR.
                                        Chief Judge
                                        United States District Court